# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Shukai Chen, Christina Lira-Porcho, Rita Manning, Keppie Moore, Yike Xue, John Turek, Jack Garthwaite, Robin Prebe, Jewel Mitchell, Beverly Sikora, Darrell Sandifer, Thelma Brown, Patricia Logsdon, Lisa Dannolfo, Scott Dunham, Laurie Williams, Sabrina Jackson, Tammy Gower, Shirley Wiley, Kim McCullough, Robert Diehl, Stephanie Baker, Jiyoung Kim, Curtis McMaster, Raymond Lewis, Caleb Rogers, Lindsey Arotin, Angela Wilczynski, Shanequa Morris, Katrina Bailey, and Tori Gouge, *on behalf of themselves and all others similarly situated*, | Civil No. 21-1247 (DWF/DTS) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Target Corporation, | |
| Defendant. | |

---

Bilal Essayli, Esq., and David Andrew Brown, Esq., Essayli & Brown; Craig Richard Heidemann, Esq., and Donald M. Brown, Esq., Douglas, Haun, and Heidemann, P.C.; David M. Cialkowski, Esq., and Ian F. McFarland, Esq., Zimmerman Reed, LLP; Sharon S. Almonrode, Esq., and Dennis A. Lienhardt, Jr., Esq., and E. Powell Miller, Esq., The Miller Law Firm, P.C., counsel for Plaintiffs.

Ellen B. Silverman, Esq., Jennifer Weller, Esq., Margaret Ann Santos Esq., and Margarita Gokhberg, Esq., Hinshaw & Culbertson, LLP, counsel for Defendant.

---

**INTRODUCTION**

This putative class action is before the Court on Defendant's Motion to Strike and Dismiss Plaintiffs' First Amended Class Action Complaint. (Doc. No. 56 ("Motion").) Plaintiffs oppose the Motion. (Doc. No. 68 ("Pl. Opp.").) For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion.

**BACKGROUND**

Defendant Target Corporation ("Target" or "Defendant") advertises and sells Apple iTunes Gift Cards ("Gift Cards"). (Doc. No. 47 ("First Amended Complaint" or "FAC") ¶ 41.) Target receives the Gift Cards from a third-party vendor, and for each sale, receives a commission from that vendor. (*Id.* ¶ 1951.) Upon arrival to Target, the Gift Cards are packaged in a way that advertises their value in an amount certain, determined and paid for at the time of sale. (*See id.* ¶ 41 *see also* Doc. No. 58 ("Def. Memo.") at 4 (front image of Gift Card packaging).) The packaging conceals a 16-digit activation code ("Activation Code") on the back of the Gift Card that is required to redeem the Gift Card.[1] (FAC ¶ 1; *see also* Def. Memo. at 5 (back image of Gift Card packaging; 6 (image of concealed Activation Code).)

At the point of purchase, consumers load funds onto the Gift Card at a Target retail store for those funds to be used at a later time. (*Id.* ¶ 43.) Target then activates the Gift Card so that the Activation Code may be used. (*Id.*) Plaintiffs Shukai Chen, Christina Lira-Porcho, Rita Manning, Keppie Moore, Yike Xue, John Turek, Jack

---

[1]     The Activation Code is further covered by a strip that must be removed to reveal the 16-digit code. (*See* Def. Opp. at 6 (image of concealed Activation Code).)

Garthwaite, Robin Prebe, Jewel Mitchell, Beverly Sikora, Darrell Sandifer, Thelma Brown, Patricia Logsdon, Lisa Dannolfo, Scott Dunham, Laurie Williams, Sabrina Jackson, Tammy Gower, Shirley Wiley, Kim McCullough, Robert Diehl, Stephanie Baker, Jiyoung Kim, Curtis McMaster, Raymond Lewis, Caleb Rogers, Lindsey Arotin, Angela Wilczynski, Shanequa Morris, Katrina Bailey, and Tori Gouge (collectively, "Plaintiffs"), on behalf of themselves and those similarly situated, allege that since at least 2017, Target has known that the Gift Cards it sells are unsecure and susceptible to tampering by third parties.[2]  (*Id.* ¶ 42.)

Each Plaintiff claims that they purchased one or more Gift Cards from a Target store between 2017 and 2020 and that when they attempted to use the Gift Card(s), the funds had been drained by unidentified third parties.[3]  (*Id.* ¶¶ 8-38.)  Sixteen plaintiffs allege that they filed a complaint with Target and that Target allegedly refused to refund their money.  (*Id.* ¶¶ 8-14, 17-18, 20-22, 30, 34, 36, 38).  Plaintiffs further allege that Target has received "hundreds, if not thousands of complaints," both at its headquarters

---

[2]     Plaintiffs specifically allege that third parties tamper with the Gift Cards' Activation Codes prior to a consumer's purchase of them at Target retail stores. (FAC ¶ 42.)  Plaintiffs assert that "[o]ne potential method third parties were using to learn the concealed Activation Code involved the third parties removing the security tape covering the Activation Code on the Gift Cards, recording the Activation Code and replacing the tamper evident tape with a commercially available equivalent substantially similar, but not identical, to the original tamper evident tape or other such means." (*Id.* ¶ 46.)

[3]     Plaintiffs reside in the following states: California, Connecticut, Florida, Georgia, Illinois, Kentucky, Massachusetts, Maryland, Michigan, Missouri, Mississippi, Nevada, New York, New Jersey, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, and Utah.  (FAC ¶¶ 8-38.)

in Minnesota and in various stores around the country, by others who experienced the depletion of their Gift Card funds.[4]  (*Id.* ¶¶ 47, 49; *see also* FAC Exs. 1, 2 (spreadsheet listing nearly 700 complaints from consumers who purchased Gift Cards).)  Plaintiffs contend that while these complaints put Target on notice that the Gift Cards were not secure prior to selling them to consumers (*id.* ¶ 47), Target:  (1) continued to sell the Gift Cards without warning or disclosing to consumers that there was a risk the Gift Cards could be worthless to them after purchase (*id.* ¶¶ 50, 53);[5] and (2) "failed to take adequate and reasonable measures to ensure that third parties did not tamper with the Gift Cards and to protect its customers from having their Gift Card funds depleted or used by third parties" (*id.* ¶ 51).[6]  Plaintiffs assert that, "[n]o reasonable consumer," including Plaintiffs, "would knowingly purchase a Gift Card where there was a probability or

---

[4]     Plaintiffs further allege that Target regularly communicated with complainants through its Guest Services or other departments to discuss the circumstances of the fund depletion.  (FAC ¶ 50.)

[5]     Plaintiffs claim that because Target had "special knowledge" of facts to which they did not have access, Target had a duty to disclose.  (FAC ¶¶  54, 55.)  Plaintiffs further allege that "without being told that their Gift Cards were not secure and could have easily been compromised prior to the first sale in the stream of commerce in a manner that allowed third parties to withdraw the cash loaded onto them," Plaintiffs "naturally concluded that the amounts credited on the [Gift] Cards would be available to them."  (*Id.* ¶ 54.)

[6]     Plaintiffs assert that Target could have trained its employees to physically check the Gift Cards for tampering of the security tape, warned customers to check the Gift Cards for tampering before purchasing and loading the Gift Cards with funds, or used security devices or procedures to prevent the Gift Cards' security tape from being accessed by store visitors prior to checkout—such as by having the sellable Gift Cards accessible only to store personnel.  (*Id.* ¶ 52.)

possibility that, prior to sale, the secret Activation Code was known to third parties other than Target or an entity with a 'need to know.'" (*Id.* ¶ 58.)

Plaintiffs allege that they "were damaged in the amount of the money loaded on the [Gift Cards] but lost due to a third party using the funds," and that they "suffered embarrassment, humiliation and distress associated with giving valueless Gift Cards to family members, friends, and others."[7] (*Id.* ¶ 62.) Plaintiffs further allege that "[t]he tampering of Gift Cards purchased from Target is rampant and widespread and Target is well-aware of the problem, yet Target continues to sell unsecure Gift Cards susceptible to tampering without warning consumers of this fact."[8] (*Id.* ¶ 63.)

Plaintiffs seek to certify a "Nationwide Class" under Fed. R. Civ. P. 23(b)(2) and (b)(3) defined as:

> All purchasers of an Apple iTunes Gift Card, acquired from Target retail stores, which was subject to unauthorized use by a third party after purchase of the Gift Card but prior to the first authorized use.

(FAC ¶65). Plaintiffs' 365-page First Amended Complaint alleges 163 Counts against Target. (*See* FAC ¶¶ 82-2007.) Their allegations include violations of consumer fraud and warranty statutes of 50 states and the District of Columbia (Counts 1-157) (*see id.* ¶¶ 82-1945), as well as common law claims for unjust enrichment (Count 158), negligent misrepresentation (Count 159), fraud by omission (Count 160), breach of contract (Count 161), breach of implied contract (Count 162), and negligence (Count 163) on

---

[7]    Plaintiffs claim that "Target has failed and refused" to replenish the balance on their Gift Cards, or to refund their money. (FAC ¶ 60.)

[8]    Each Plaintiff claims that they remain in the market for Gift Cards and wishes to purchase them in the foreseeable future from Target. (FAC ¶¶ 8-38).

"behalf of the nationwide class (applying Minnesota law) or, alternatively, the State Subclasses" (*see id.* ¶¶ 1946-2007).

Target moves to dismiss and strike Plaintiffs' First Amended Complaint under Rules 12(b)(1), 12(b)(6), and 12(f).  (*See generally* Def. Memo.)  Specifically, Defendant argues that under Rule 12(b)(1), the Court should dismiss all state and common law claims in states for which there is no named Plaintiff as well as claims in states where Plaintiffs failed to comply with state-specific requirements.  Defendant further argues that the Court should dismiss Plaintiffs' claims under Rule 12(b)(6) because Plaintiffs: (1) fail to state a claim for violations of each state's consumer protection or unfair trade and deceptive practices act statute; (2) fail to plead that the Gift Cards were unmerchantable when they left Target's possession; (3) fail to allege that they relied on Target in purchasing the Gift Cards; and (4) misapply Minnesota law to their nationwide claims.  Finally, Defendant argues that this Court should strike or dismiss the class allegations under Rule 12(f) because:  (1) determining which laws of 51 jurisdictions should apply to these nationwide claims is a complicated task that does not comport with Rule 23; and (2) Plaintiffs cannot show that common questions predominate.

For the reasons discussed below, the Court finds that Plaintiffs' First Amended Complaint is sufficient to proceed largely as is.  The Court notes, though, that success at this stage does not mean that Plaintiffs' claims will ultimately prevail, or that class certification is warranted.  The Court strongly encourages the parties to engage in settlement discussions.

## DISCUSSION

### I.      Legal Standards

#### A.      Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir. 2000). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.,* 915 F.2d 1171, 1174 (8th Cir. 1990).

A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on factual truthfulness of its averments. *Osborn v. United States,* 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone, and the court assumes the allegations are true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *accord* Osborn, 918 F.2d at 729 n.6. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Titus,* 4 F.3d at 593; *accord Osborn,* 918 F.2d at 729 n.6.

#### B.      Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## C.     Rule 12(f)

Rule 12(f) provides that the Court may, on its own or on motion made by a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. R. 12(f). A district court enjoys "liberal discretion" under this rule. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.

8

2007).  Striking a party's pleadings, however, "is an extreme and disfavored measure."

(*Id.* (quoting *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

Nonetheless, "it is sometimes appropriate to strike pleadings, such as when a

portion of a complaint lacks a legal basis." *Donelson v. Ameriprise Fin. Servs. Inc.*,

999 F.3d 1080, 1092 (8th Cir. 2021).  Indeed, "[i]t is 'sensible . . . to permit class

allegations to be stricken at the pleading stage' if it is 'apparent from the pleadings that

the class cannot be certified' because 'unsupportable class allegations bring 'impertinent'

material into the pleading' and 'permitting such allegations to remain would prejudice the

defendant by requiring the mounting of a defense against claims that ultimately cannot be

sustained.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 1383 (3d ed.)).

## II.     Motion to Dismiss under Rule 12(b)(1)

### A.     States without a Named Plaintiff

As a threshold matter, Defendant argues that the Court must dismiss all counts

originating in states where there is no class representative because Plaintiffs lack standing

to bring class claims based on state laws in states where they do not reside and were not

injured.[9]  (Doc. No. 58 ("Def. Memo.") at 12-14; *see also* Doc. No. 72 ("Reply") at 2-5);

---

[9]     There is no representative plaintiff for the following Counts:  1-3 (Alabama), 4-6 (Alaska), 7-9 (Arizona), 10-12 (Arkansas), 18-20 (Colorado), 24-26 (Delaware), 37-40 (Hawaii), 41-43 (Idaho), 47-49 (Indiana), 50-52 (Iowa), 53-55 (Kansas), 59-60 (Louisiana), 61-63 (Maine), 73-76 (Minnesota), 83-85 (Montana), 86-88 (Nebraska), 92-94 (New Hampshire), 98-100 (New Mexico), 104-106 (North Carolina), 107-109 (North Dakota), 122-124 (Rhode Island), 128-130 (South Dakota), 131-133 (Tennessee), 140-142 (Vermont), 143-145 (Virginia), 146-148 (Washington), 149-151 (West Virginia), 152-154 (Wisconsin), 155-157 (Wyoming), and 27-29 (District of Columbia).

Plaintiffs contend that standing is more properly addressed at class certification and ask the Court to defer consideration of the issue until that time.  (Doc. No. 68 ("Pl. Opp.") at 7-10.)

Over Defendant's strong objection, the Court agrees with Plaintiffs.  While standing "is not dispensed in gross" and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek," *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021), the U.S. Supreme Court has made clear that in the context of a class action, "there are situations in which a court may defer" the standing question "to later in the case." *Target Corp*, 66 F. Supp. 3d at 1160 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).  This does not stand for the proposition that there is a blanket delay in the adjudication of standing for all class-action lawsuits; but rather, permits a delay when class certification is "logically antecedent" to standing.  *Roth v. Life Time Fitness, Inc.*, Civ. No. 15-3270, 2016 WL 3911875, at *4 (D. Minn. July 14, 2016); *see also Ortiz*, 527 U.S. at 831; *Alchem*, 521 U.S. at 612.

Given the number of Target stores nationwide and nothing in the FAC restricting Plaintiffs' allegations to any particular geographic area, the Court finds it unlikely that any alleged liability is limited to the states in which a Plaintiff is currently named. Rather, the Court finds that Plaintiffs have plausibly alleged that they can establish standing to represent a class of individuals in every state and the District of Columbia and thus that they have standing to raise state-law claims in those jurisdictions.  *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159-60 (D. Minn. 2014).  The

Court therefore finds that class certification logically precedes an Article III standing analysis and defers consideration until after the class-certification stage.[10]  *See, e.g.*, *Hudock v. LG Elecs. U.S.A., Inc.*, Civ. No. 16-1220, 2017 WL 1157098, at *2 (D. Minn. Mar. 27, 2017); *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 886-87 (D. Minn. 2021); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 776 (D. Minn. 2020); *Roth*, *2016* WL 3911875, at *4-5.

### B.    States with Pre-Litigation Notice Requirements

Defendant further argues Plaintiffs lack standing to bring class claims under the consumer protection statutes in Mississippi and Texas because those statutes require pre-suit notice and Plaintiffs do not allege that pre-suit notice was provided.  (Def. Memo. at 14-15; Reply at 5-6.)  Because Plaintiffs do not plead that they complied with those requirements on behalf of themselves or the putative class, Defendant argues that Counts 77 and 134 should be dismissed.

Under Texas law, notice is required "at least 60 days before filing the suit" and must advise "in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant." Tex. Bus. & Com. Code § 17.505(a).  Mississippi requires that "[i]n any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to

---

[10]    Target may renew its arguments on standing at this time.

resolve any claim through an informal dispute settlement program approved by the

Attorney General."  Miss. Code Ann. § 75-24-15(2).

Plaintiffs argue that whether or not they complied with the statutes is irrelevant

because pre-suit notice is a state procedural requirement not required by Minnesota's

procedural law which governs this case.[11]  (Pl. Opp. at 14-15.)

Because this Court sits in the District of Minnesota, it must apply Minnesota's

choice of law rules.  *Nesladek v. Ford Motor Co.,* 46 F.3d 734, 736 (8th Cir.), *cert.*

*denied*, 516 U.S. 814 (1995) ("Federal courts sitting in diversity apply the forum state's

conflict of laws rules.").  Under Minnesota law, the first issue that must be resolved in a

choice of law analysis is whether the law at issue is substantive or procedural.  *Id.*  If the

law is procedural, then the law of the forum state is applied.  *Id.*  If, on the other hand, the

law is substantive, the choice of law analysis continues to the next step.[12]  *Id.*  Minnesota

law controls the substantive/procedural determination.  *Id.*

---

[11]     Plaintiffs further assert that they complied with Tex. Bus. & Com. Code §17-505(a) by providing pre-suit notice to Target via a letter dated March 19, 2021, detailing the basis of their claims and waited the requisite 60 days before filing suit.  (*See* Doc. No. 69 Exs. 1, 2.)  Defendant maintains that because the notice was insufficiently detailed, Plaintiffs still failed to comply with the Texas statute.  As discussed below, the Court finds that pre-suit notice was not required; therefore, the Court need not address whether Plaintiffs' notice was sufficient.

[12]     When the facts and claim involve substantive laws, the Court looks to whether the competing states' substantive laws truly conflict.  If there is no significant difference, there is no conflict.  The analysis ends, and the law of the forum applies.  *See, e.g.*, *Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 29 (Minn. 1996); *Davis by Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 723 (Minn. App. 1987) (forum applies own law where there is "no significant distinction" between laws of two states).  "If there is an actual conflict and both laws can be constitutionally applied, then five factors are considered in order to make a choice:  '(1) predictability of result; (2) maintenance of

In Minnesota, "substantive law is that part of law which creates, defines and regulates rights." *Zaretsky v. Molecular Biosystems, Inc.*, 464 N.W.2d 546, 548 (Minn. Ct. App. 1990) (quoting *Meagher v. Kalvi*, 88 N.W.2d 871, 879-80 (Minn. 1958)). Procedural law, though, "prescribes [the] method of enforcing the rights or obtaining redress for their invasion." *Id.*  While the distinction between substantive and procedural law is not always clear, the Court finds that the pre-suit notice requirements here do not alter the substantive elements of Plaintiffs' claims; rather, the requirements regulate only when Plaintiffs may litigate the case.  The Court therefore concludes that the pre-suit notice requirements are wholly procedural and finds that Counts 77 and 134 may proceed as part of this federal class action lawsuit in accordance with Fed. R. Civ. P. 23.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (finding that a matter may proceed as a federal class action, regardless of a state procedural bar, so long as the application of Rule 23 does not abridge, enlarge or modify any substantive right.).

## C.    Georgia Uniform Deceptive Trade Practices Act

Defendant further contends that Plaintiffs lack standing in Georgia because its Uniform Deceptive Trade Practices Act, O.C.G.A. §10-1-370 ("Georgia UDTPA"), permits only injunctive relief and Plaintiffs fail to plead any facts that support the claim that they would be subject to any alleged recurrent theft in purchasing a Gift Card from

---

interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.'"  *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1393 (8th Cir. 1997) quoting *Jepson v. General Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn. 1994).

Target.  (Def. Memo. at 15-16; Reply at 6-7.)  Defendant therefore asserts that Count 33 must be dismissed.  Plaintiffs concede that while monetary damages are unavailable under the Georgia UDTPA, the statute does not prohibit attorney fees and costs.  (Pl. Opp. at 18.)

Plaintiffs argue that they have properly alleged future harm by claiming that they are likely to purchase potentially compromised Gift Cards from Target in the future, and have repeatedly stated that Target has knowingly sold potentially compromised Gift Cards to the public for multiple years and continue to do so to this day.[13]  (*Id*. (citing FAC, ¶ 475 ("Because Plaintiffs and Georgia Subclass members will likely make future purchases of the Gift Cards, and Target has not changed its course of conduct, Target's violations present a continuing risk to the Plaintiffs and Georgia Subclass members, as well as to the general public.")).)

The Court agrees with Defendant insofar as it finds that Plaintiffs' allegations of past harm, of which Plaintiffs are now aware, are insufficient to support a need for injunctive relief.  *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); *see also Silverstein v. Procter & Gamble Mfg. Co.*, Civ. No. 108–003, 2008

---

[13]  Defendants argue that Plaintiffs cannot manufacture a threat of future harm by claiming that they "will likely" purchase Gift Cards in the future which they speculate could be subject to tampering.  Defendant further argues that the claim is disingenuous because Plaintiffs cannot reasonably allege future harm when Plaintiffs assert that they would not have purchased the Gift Cards if they had known that the Gift Cards could be compromised.

WL 4889677, at *4 (S.D.Ga. Nov. 12, 2008) ("In order to obtain injunctive relief under Georgia's UDTPA, a plaintiff must show that he is likely to be damaged by the defendant's deceptive trade practice. A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is likely to be damaged within the meaning of [the statute].")). The Court finds that Plaintiffs cannot reasonably allege ongoing or future harm by asserting that they are likely to purchase Gift Cards from Target in the future while simultaneously alleging that they are aware of an ongoing risk in doing so, and that such awareness would have been material to their decision to purchase the Gift Cards in the past.[14] (*See* FAC ¶¶ 58, 472-73, 475.)

Notwithstanding, the Court observes that Plaintiffs are correct insofar as the Georgia UDTPA does not prohibit attorneys' fees and costs.[15] Georgia UDTPA(b). The Court therefore declines to dismiss Count 33 in its entirety but limits any potential relief to recoverable attorneys' fees and costs under Georgia UDTPA(b).

---

[14] Early in their FAC, Plaintiffs assert, "[n]o reasonable consumer, including Plaintiffs and Class members, would knowingly purchase a Gift Card where there was a probability or possibility that, prior to sale, the secret Activation Code was known to third parties other than Target or an entity with a 'need to know.'" (FAC ¶ 58.) The Court cannot reconcile Plaintiffs' early assertion with any notion that they are likely to purchase Gift Cards from Target in the future now that they are aware of the potential harm.

[15] Georgia UDTPA(b) states: "Costs shall be allowed to the prevailing party unless the court otherwise directs. The court, in its discretion, may award attorneys' fees to the prevailing party if: (1) The party complaining of a deceptive trade practice has brought an action which he knew to be groundless; or (2) The party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive."

**D.     Common Law Nationwide Claims in States without a Named Plaintiff**

Finally, Defendant argues that the Court should dismiss Counts 158-163 because Plaintiffs lack standing to bring common law nationwide claims for states in which they do not reside.[16]  (Def. Memo. at 16-17; Reply at 7-8.)  Defendant asserts that because the claims are based on common law, Plaintiffs must rely on state law and that they lack standing do so in the states where they do not reside.  Defendant further asserts that Plaintiffs cannot establish standing in those states by self-selecting the application of Minnesota law.

Plaintiffs argue that they have the requisite standing to bring their nationwide common law claims because they have pleaded that each claim can be brought under Minnesota law and that courts in the Eighth Circuit regularly defer fact intensive choice-of-law issues until after discovery has taken place.  (Pl. Opp. at 19.)  Plaintiffs specifically object to the notion that they "self-selected" Minnesota law and assert that the legal theories in their First Amended Complaint reflect an organizational roadmap of how they may proceed, ultimately to be decided at a later stage in the proceedings, but sufficient at this point defeat Defendant's motion to dismiss.[17]  (*Id.* at 10-12.)

---

[16]     Counts 158-163 assert common law claims for unjust enrichment, negligent misrepresentation, fraud by omission, breach of contract, and breach of implied contract and negligence, respectively.  (*See* FAC ¶¶ 1946-2007.)  Defendant argues that because each claim is listed as a general count, each count is essentially fifty-one claims representing one for each state and the District of Columbia.

[17]     Plaintiffs further assert that discovery will likely show that applying Minnesota law to all claims against Target is constitutional because Target is incorporated, headquartered, and operates its principal place of business there.  The Court agrees

As discussed above, the Court finds that any choice-of-law analysis at this time is premature. While Plaintiffs' claims will ultimately require an intensive choice-of-law analysis, discovery may show that application of Minnesota law is constitutionally appropriate. At that time, the Court will engage in any necessary analysis to determine the appropriate choice of law. At this stage in the proceedings, the Court declines to dismiss Plaintiffs' nationwide claims for unjust enrichment, negligent misrepresentation, fraud by omission, breach of contract, and breach of implied contract and negligence for lack of standing. *See, e.g.*, *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1350-51 (E.D. Mo. 2020) (denying motion to dismiss and deferring fate of nationwide class allegations pleaded under Missouri law, including unjust enrichment claim, until after discovery); *In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2017 WL 3863866, at *6 (W.D. Mo. Aug. 3, 2017) (finding that plaintiffs had plausibly alleged nationwide unjust enrichment and breach of warranty claims under Tennessee law and deferring choice of law issues). Certainly, any choice of law analysis will be rigorous, and Plaintiffs may not ultimately obtain the outcome they seek; however, the Court finds that dismissal of Counts 158-163 at this time is premature.

## III.    Motion to Dismiss under Rule 12(b)(6)

Defendant argues further that regardless of standing, Plaintiffs' claims fail as a matter of law. Specifically, Defendant contends that Plaintiffs: (1) fail to state a claim for violations of each state's consumer protection or unfair trade and deceptive practices

---

insofar as discovery is necessary before any discussion or analysis on the issue may properly occur.

act statute (collectively "UDAP"), whether or not there is a representative plaintiff who actually purchased a Gift Card in that state; (2) fail to plead that the Gift Cards were unmerchantable when they left Target's possession; (3) fail to allege that they relied on Target in purchasing the Gift Cards; and (4) misapply Minnesota law to their nationwide claims.  (Def. Memo. at 17-32; Reply at 8-24.)

     **A**      **Failure to State a Claim for Violations of UDAP statutes**

Defendant argues that because each of Plaintiff's UDAP claims seeks to hold Target liable for third-party criminal misconduct, Plaintiffs' allegations fail because they do not meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) and fail to allege causation, reliance, and a duty to disclose.  (Def. Memo. at 17-20; Reply at 8-10.)

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading "fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) serves to deter suits filed for the purpose of discovering unknown wrongs and to enable a defendant to understand a plaintiff's claim and effectively prepare a defense.  *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997).  To satisfy Rule 9(b), "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud.'"  *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted).  "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted).

### 1. Particularity of Pleading

Defendant contends that Plaintiffs cannot point to any actual representation made by Target that the Activation Codes concealed under packaging on the Gift Cards sold at its stores would be free from the potential of third-party interception, and that Plaintiffs cannot rescue these claims by concocting a theory based on fraud by omission, particularly when Plaintiffs do not attempt to address the differing standards under each state's UDAP statute. (Def. Memo. at 17-20; Reply at 8-10.)

Citing Plaintiffs' allegations that the "Cards are not secure and could be tampered with prior to the first sale in the stream of commerce," and that "Target failed to warn or disclose to Gift Card purchasers . . . of the probability and/or possibility that their Gift Cards had been tampered with in a manner that allows third parties to withdraw the cash loaded onto them" (FAC ¶¶ 53,55), Defendant asserts that there is no duty to disclose "possible outcomes." Defendant further argues that while Plaintiffs' FAC is rife with speculation and vague claims that Target should have warned them of the "probability" or "possibility" of third-party tampering, the FAC fails to provide detail necessary to support an omission-based claim such as where the omitted information should or could have been revealed and what representations Plaintiffs actually relied on that failed to include omitted information.

Plaintiffs argue that their allegations are sufficient to establish that Defendant has been aware of potential tampering since 2017 through: (1) its possession of the Gift Cards prior to sale; (2) receipt of hundreds of complaints from Plaintiffs and purported Class members who experienced the depletion of funds from their purchased Gift Cards;

(3) records indicating when the Gift Cards are loaded, when they are redeemed, and how they are redeemed; (4) in-store complaints made to Target employees by Plaintiffs and purported Class members, and (5) regular communication between its Guest Services department and Plaintiffs and purported Class members regarding the depletion of funds from Gift Cards.  (Pl. Opp. at 49-50 (citing FAC ¶¶ 42, 46-50).)  Plaintiffs also argue that they have properly alleged that despite Target's extensive knowledge, Target has continually failed to take reasonable measures to protect the Gift Cards from alteration by third parties and has failed to disclose or warn Plaintiffs and purported Class members that the Gift Cards are susceptible to third-party tampering.  (*Id.* at 50 (citing FAC ¶¶ 50-59).)

Finally, Plaintiffs point to their allegations that Target mispresented the quality, characteristics, and the value of the Gift Cards and falsely represented that the sale of the Gift Cards would be safe and secure from theft to argue that they have sufficiently pleaded their statutory fraud claims based on deceptive conduct.[18]  (*Id.* (citing FAC ¶¶ 88, 91-94).)  Plaintiffs contend that these allegations satisfy Rule 9(b)'s required "who, what, when, where, and how" of Target's alleged fraud, and that the allegations

---

[18]     Plaintiffs contend that their omission-based fraud allegations are sufficiently pleaded for the same reasons, specifically, that Target failed to disclose the truth regarding the quality, characteristics, and value of the Gift Cards.  Since Target has allegedly been aware of these facts since 2017, Plaintiffs assert that Target could have disclosed them to Plaintiffs and purported Class members on the Gift Card packaging or in-store displays, through employee statements at the register prior to purchase, or through other means.  (Pl. Opp. at 52-53.)

appropriately facilitate Target's ability to respond to and to prepare a defense to their fraud claims.  (*Id.* at 50-52.)

Over Defendant's strong objection, the Court finds that Plaintiffs' claims satisfy Rule 9(b)'s heightened pleading requirement and are sufficient to survive Defendant's motion to dismiss.  Specifically, the Court finds that Plaintiffs have sufficiently alleged that Defendant knew or should have known that the Gift Cards in its stores were subject to third-party tampering but nonetheless continued to allow Plaintiffs and the purported Class to unknowingly purchase worthless Gift Cards without taking steps to prevent the tampering or warn its customers.

"The purpose of Rule 9(b) is to provide the defendant with notice of and a meaningful opportunity to respond specifically to charges of fraudulent conduct by apprising the defendant of the claims against it and the facts upon which the claims are based. *See Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639, 644 (8th Cir. 1995).  Here, the Court finds that Plaintiffs have provided sufficient detail to provide Defendant both notice of and a meaningful opportunity to respond to their allegations. Moreover, while Defendant argues that Plaintiffs' allegations are vague and speculative, the Court notes that "Rule 9(b) does not require that a 'complaint be suffused with every minute detail of a misrepresentation.'" *McGregor v. Uponor, Inc.,* Civ. No. 09-1136, 2010 WL 55985, at *4 (D.Minn.Jan.4, 2010) (quoting *Carlson v. A.L.S. Enters.,* Inc., No. 07-3970, 2008 WL 185710, at *3 (D. Minn. Jan. 18, 2008)).  The Court finds that Plaintiffs' allegations adequately provide the "who, what, where, when, and how" of

Target's alleged fraud and therefore declines to dismiss any claim for insufficient particularity of pleading. *Drobnak*, 561 F.3d at 783.

### 2. Causation and Reliance

Defendant also argues that Plaintiffs fail to adequately allege causation and reliance. (Def. Memo. at 20-21; Reply at 10-11.) While each state's UDAP statute requires causation, Defendant argues that Plaintiffs have not plausibly alleged that Target's security procedures and practices were inadequate, nor that such practices were the cause of the alleged third-party theft. Defendant further argues that every state except Utah requires actual damages and that Plaintiffs' claims in Counts 64, 119, and 134 additionally require that Plaintiffs allege reliance[19]—all of which Defendant claims Plaintiffs fail to plead. Defendant asserts that rather than allege that Target made an omission or misrepresentation that caused them actual damages, Plaintiffs merely speculate that they could not use their Gift Cards because the Activation Code was compromised in a Target store.[20]

Plaintiffs argue that they have sufficiently pleaded causation and reliance by including multiple allegations that Target knew its security measures were inadequate, that Plaintiffs and purported Class members purchased the Gift Cards under the mistaken

---

[19]    In Counts 64, 119, and 134, Plaintiffs allege violations of the Maryland Consumer Protection Act, Pennsylvania Unfair Trade Practices Act, and the Texas Deceptive Trade Practices Act, respectively. (*See* FAC ¶¶ 878-887, 1527-1537, 1681-1693.)

[20]    Defendant contends that it is just as likely that the Activation Code was obtained by a third-party criminal prior to the Gift Card's arrival in a Target store, or after the Gift Card left the store. (Def. Memo. at 20-21.) The Court notes that such questions of fact are not appropriately addressed during the pleading stage.

belief that the Gift Cards were secure and worth the value represented, and that had

Target disclosed the potential tampering and warned Plaintiffs, they would not have

purchased the Gift Cards.[21]  (Pl. Opp. at 54 (citing FAC ¶¶ 1-2, 45-47, 51-52, 57-58, 96).)

Plaintiffs further argue that they have properly alleged that they suffered actual

damages by pointing to allegations referencing funds that were loaded onto the Gift

Cards that were taken by third parties and left the Gift Cards worthless.  (*Id.* (citing

FAC ¶¶ 8-38).  Plaintiffs similarly contend that their First Amended Complaint includes

multiple allegations that their damages were caused by Target's unlawful

misrepresentations and omissions about the Gift Cards, including knowing

misrepresentations and omissions with respect to the Gift Cards' quality, characteristics,

and value.  (*Id.* at 55.)

Again, over Defendant's strong objection, the Court finds that Plaintiffs'

allegations are sufficient to defeat Defendant's motion to dismiss.  Specifically, the Court

finds that Plaintiffs adequately plead causation and reliance by alleging that despite

knowing its security measures were inadequate, Target failed to disclose any potential

---

[21]    Plaintiffs argue specifically that they have sufficiently pleaded reliance to satisfy
the requirements of Counts 64, 119, and 134 under the laws of Maryland, Pennsylvania,
and Texas through their allegations that:

> Plaintiffs and [] Subclass members relied on Target's misrepresentations
> and omissions in purchasing the Gift Cards.  Had Target been honest and
> disclosed (1) the inadequacy of Target's security practices related to the
> Gift Cards, (2) that previously-sold Gift Cards had repeatedly been
> tampered with, and (3) there was a high likelihood that unsold Gift Cards
> had also been tampered with, Plaintiffs and Class members would not have
> purchased the Gift Cards.

(Pl. Opp. at 54-55 (citing FAC ¶¶ 885, 1535, 1690).)

tampering to Plaintiffs and therefore contributed to Plaintiffs' mistaken belief that the Gift Cards were secure.[22]   (*See* FAC ¶¶ 1-2, 45-47, 51-52, 57-58, 96.)  The Court also finds that Plaintiffs have sufficiently alleged that they suffered actual damages caused by Target's knowing misrepresentations and omissions about the Gift Cards' quality, characteristics, and value.  (*See id.* ¶¶ 8-38 (clearly setting forth precise dollar amounts individual Plaintiffs lost when the money they loaded onto Gift Cards was depleted; *see also id.* ¶¶ 88, 125, 164, 200 (clearly setting forth alleged misrepresentations and omissions that caused Plaintiffs' alleged damages).)  While Plaintiffs may not ultimately prevail on their claims, the Court declines to dismiss any claim at this time for failure to plead causation, reliance, or actual damages.

### 3.      Duty to Disclose

Defendant similarly contends that Plaintiffs' claims alleging UDAP statute violations in California, Maryland, Pennsylvania, and Texas fail for the additional reason that they require a duty to disclose in order to give rise to a claim based on omission. (Def. Memo. at 21-22; Reply at 11-13.)  Defendant asserts that there is no duty to disclose when, as here, the parties are engaged in an arm's-length business negotiation, or when a defendant is unaware of any alleged defect.  Defendant argues that while Plaintiffs rely on consumer complaints to show that Target was aware that the Gift Cards

---

[22]     The Court similarly finds that Plaintiffs have sufficiently alleged reliance in Counts 64, 119, and 113 under the laws of Maryland, Pennsylvania, and Texas, respectively.  (*See* FAC ¶¶ 885, 1535, 1690 (clearly stating that Plaintiffs in those states relied on Target's misrepresentations and omissions when deciding to purchase Gift Cards and that Plaintiffs would not have purchased the Gift Cards had all information regarding potential tampering been disclosed to them).)

in their stores could be tampered with, the complaints do not establish the requisite

knowledge required to establish that Target had any duty to disclose.  (*Id.* at 21 (citing

*Berenblat v. Apple, Inc.*, Civ. Nos. 08-4969 JF, 09-1649 JF, 2010 WL 1460297, at *9

(N.D. Cal. Apr. 9, 2010) (finding that consumer complaints posted on a company website

were insufficient to establish that the company had requisite knowledge of alleged defect

necessary to trigger a duty to disclose).)  Accordingly, Defendant argues that Counts 14,

64, 119, and 134 should be dismissed for this reason as well.[23]

Plaintiffs maintain that their allegations related to hundreds of consumer

complaints are sufficient to establish that Target had the requisite knowledge of potential

tampering necessary to trigger a duty to disclose.  (Pl. Opp. at 56 (citing FAC ¶¶ 42, 46-

59; Exs. 1 & 2).)  Plaintiffs point out that unlike the complaints posted on a website in

*Berenblat*, Plaintiffs filed formal complaints with Target itself and that Target's

responses to the complaints clearly evidence Target's knowledge.

The Court finds that Plaintiffs have sufficiently pleaded that Target had the

requisite knowledge of the alleged tampering to trigger a duty to disclose.  The Court

agrees with Plaintiffs that their formal complaints to Target clearly establish that Target

was aware of the alleged defects with the Gift Cards.  (*See* FAC ¶ 47, Exs. 1,2.)  Again,

while Plaintiffs may not ultimately prevail on their claims, the Court finds that each

contested claim properly pleads a duty to disclose and therefore declines to dismiss any

claim on this basis.

---

[23]     In Count 14, Plaintiffs allege violations of California's Consumer Legal Remedies
Act.  (*See* FAC ¶¶ 239-254.)

B.     **Implied Warranty of Merchantability**

Defendant next argues that because all states except Louisiana have adopted

UCC § 2-314 which provides that to be "merchantable" goods must be "fit for the

ordinary purposes for which such goods are used," Counts 16, 22, 31, 35, 45, 57, 65, 68,

71, 78, 81, 96, 102, 111, 114, 117, 120, 126, 135, and 138 fail because Plaintiffs do not

plead that the Gift Cards were unmerchantable when they left Target's possession.[24]

(Def. Memo. at 22-23; Reply at 13-14.)  Defendant contends that "at best" Plaintiffs'

allegations indicate that they may have been victims of a crime opportunity that occurred

at some point after the Gift Cards were purchased and activated but fall short of actually

alleging that the Gift Cards were unmerchantable at the time they left Target's

possession.

Plaintiffs contend that to accept Target's argument would require the Court to find

that Gift Cards are generally acceptable where unauthorized third parties already have the

redemption information prior to purchase, allowing them to drain the Gift Cards' value at

the moment Target activates them.  (Pl. Opp. at 45.)  Plaintiffs assert that to allege

unmerchantability, they are not required to plead that the Gift Cards lacked any value at

the time of purchase, but simply that the Gift Cards were unfit for their ordinary purpose

---

[24]    In Counts 16, 22, 31, 35, 45, 57, 65, 68, 71, 78, 81, 96, 102, 111, 114, 117, 120, 126, 135, and 138, Plaintiffs allege breach of implied warranty of merchantability under the laws of California, Connecticut, Florida, Georgia, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, and Utah, respectively.  (*See* FAC ¶¶ 263-271, 323-331, 439-447, 498-506, 630-638, 800-808, 888-896, 916-924, 956-964, 1044-1052, 1071-1079, 1253-1261, 1334-1342, 1439-1447, 1469-1477, 1507-1515, 1538-1546, 1603-1611, 1694-1702, 1730-1738.)

because of some problem that existed at that time.[25]  Plaintiffs further assert that their

First Amended Complaint includes many such allegations.  (*Id.* at 46.)

The Court finds that Plaintiffs have sufficiently alleged that the Gift Cards were

unmerchantable at the time of purchase.  Indeed, the Court finds that a Gift Card that has

been compromised before the time of purchase, such that it fails to hold any value at the

time it is activated, is clearly unfit for the ordinary purpose for which it is used.  The

Court further finds that Plaintiffs' First Amended Complaint includes sufficient

allegations pleading just this.  (*See, e.g.*, FAC ¶¶ 1, 8-38, 42-46, 50-54, 266-267, 326-

327, 442-443, 501-502, 633-634, 803-804, 891-892, 919-920, 959-960, 1047-1048, 1074-

1075, 1256-1257, 1337-1338, 1442-1443, 1472-1473, 1510-1511, 1541-1542, 1606-

1607, 1697-1698, 1733-1734).)  Accordingly, the Court declines to dismiss any claim for

failure to plead unmerchantability.[26]

### 3.    Implied Warranty of Fitness for a Particular Purpose

Defendant also argues that Counts 17, 23, 32, 36, 46, 58, 66, 69, 72, 79, 82, 97,

103, 112, 115, 118, 121, 127, 136 and 139 should be dismissed because Plaintiffs fail to

---

[25]    Defendant contends that Plaintiffs' claims still fail because alleging that the
Activation Code is known by a third party is different from alleging that it has been acted
upon or associated with another person's account at the time the card leaves a Target
store, and further, that a compromised Activation Code is not a defect with the Gift Card
itself.  (Reply at 13.)  The Court respectfully disagrees.  It defies reason that an alleged
defect—of which Target is aware—that renders the Gift Card unable to hold value,
somehow renders the Gift Card merchantable, regardless of who or what caused the
defect.

[26]    The Court notes that at this point in the proceedings, the Court takes Plaintiffs'
allegations as true and declines to engage in factual disputes.  (*See* Def. Memo.
at 23 n.11.)

establish a cause of action for the breach of an implied warranty of fitness for a particular

purpose when they fail to allege that they relied on Target's skill or judgment as to the

particular purpose for which the Gift Cards would be used when purchasing them.[27]

(Def. Memo. at 23-24; Reply at 14.)  Specifically, Defendant argues that the Gift Cards

were purchased in the normal course of trade and that Plaintiffs make no claims that they

communicated with Target regarding a specific use.

Plaintiffs argue that because:  (1) they allege in each contested Count that:

(a) Target was a merchant under the UCC; (b) Target had reason to know the particular

purposes for which the Gift Cards were required; (c) the particular purposes described

above include but are not limited to the purchase of goods online in the Apple iTunes

store; and (d) the buyers of the Gift Cards, including Plaintiffs, relied on Target's skill or

judgment to select or furnish suitable goods; and (2) their First Amended Complaint

includes general allegations that Target represented to Plaintiffs that it was selling Gift

Cards valued in an amount certain, they have sufficiently established a cause of action for

breach of an implied warranty of fitness for a particular purpose.

The Court agrees with Plaintiffs.  The U.C.C. § 2-315, which governs implied

warranties of fitness for a particular purpose, provides, "[w]here the seller at the time of

---

[27]     In Counts 17, 23, 32, 36, 46, 58, 66, 69, 72, 79, 82, 97, 103, 112, 115, 118, 121, 127, 136 and 139, Plaintiffs allege breach of implied warranty of fitness for a particular purpose under the laws of California, Connecticut, Florida, Georgia, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, and Utah, respectively. (*See* FAC ¶¶ 272-282, 332-442, 448-458, 507-517, 639-649, 809-819, 897-907, 925-935, 965-975, 1053-1063, 1080-1090, 1262-1272, 1343-1353, 1448-1458, 1478-1488, 1516-1526, 1547-1557, 1612-1622, 1703-1713, 1739-1749.)

contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." U.C.C. § 2-315.  The Court notes that the Gift Cards have a very specific purpose for which they are required, and that Plaintiffs have properly alleged that they relied on Target's representations that the Gift Cards were worth a certain dollar amount and could be used to make purchases.  The Court therefore finds that Plaintiffs have sufficiently alleged reliance on Target's skill or judgment as to the particular purpose for which the Gift Cards would be used when purchasing them and declines to dismiss any claim on this basis.[28]

### D.     Nationwide Claims

Finally, Defendant argues that Plaintiffs' nationwide claims, Counts 158-163, should be dismissed because Plaintiffs misapply Minnesota law and because they are insufficiently pleaded.  (Def. Memo. at 24-32.)

#### 1.     Choice of Law

Defendant first contends that Plaintiffs' nationwide common law claims fail because Plaintiffs wrongly apply Minnesota substantive law when they have no such

---

[28]     The Court notes that whether or not Target actually packaged the Gift Cards, Plaintiffs allege that Target marketed the Gift Cards and represented that they were worth a certain dollar value to make purchases.  (*See, e.g.*, FAC ¶¶ 41, 80.)

power to make such a selection.  (*Id.* at 24-25.)  Rather, Defendant argues that the Court

must apply Minnesota's choice of law analysis for each Plaintiff for each claim.[29]

Plaintiffs reiterate their arguments that while any choice of law analysis is

premature at this time, discovery is likely to show that Minnesota law will ultimately

apply to their nationwide claims.  (*Id.* at 20-21.)  Plaintiffs therefore ask the Court to

sustain their nationwide claims brought under Minnesota law and to defer any conflicts-

of-substantive-law analysis until after class discovery has taken place.

As discussed above, the Court finds that any choice-of-law analysis at this time is

premature.  The Court therefore turns to whether Plaintiffs' nationwide common law

claims are properly pleaded under Minnesota law and defers any further analysis.

### 2.      Unjust Enrichment-Count 158

"[T]o prevail on a claim for unjust enrichment, a claimant must establish an

implied-in-fact or quasi-contract in which the defendant received a benefit of value that

unjustly enriched the defendant in a manner that is illegal or unlawful."  *Caldas v.*

*Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (citation omitted).

---

[29]    Defendant further argues that Plaintiffs' claims fail because they do not identify
any temporal limit to their class claims and do not address any potential statute of
limitations which vary by state.  (Def. Memo. at 25 n.13.)  The Court notes that "the
possible existence of a statute of limitations defense is not ordinarily a ground for
Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."  *Joyce v.
Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir.2011) (internal quotation marks
and citation omitted).  Indeed, "[w]hether a statute of limitations bars a plaintiff's claim is
an affirmative defense, and it is well settled that plaintiffs are not required to negate an
affirmative defense in their complaint.'"  *Woodards v. Chipotle Mexican Grill, Inc.*, Civ.
No. 14-4181, 2015 WL 3447438, at *8 (D. Minn. May 28, 2015) (internal quotations
marks and citation omitted).  Accordingly, the Court declines to dismiss any claim on this
basis.

Plaintiffs allege that Target was unjustly enriched because, even though the Gift Cards were rendered worthless to consumers, Target received money from the sale of the Gift Cards, received a commission from a third-party vendor for each Gift Card, and enjoyed enrichment by retaining profits.  (*See* FAC ¶¶ 1946-55.)

Defendant argues that Plaintiffs' unjust enrichment claim fails because:  (1) Target did not retain any money received from the sale of the Gift Cards, but rather received a commission for the sales from a third party; and (2) unjust enrichment is a quasi-contractual remedy unavailable when, as here, breach of contract is also alleged (Def. Memo. at 25-26; Reply at 16-18.)  Plaintiffs contend that these arguments fail because: (1) the extent to which Target retained any money from the sales of the Gift Cards is a question of fact not appropriately before the Court at this stage in the proceedings; and (2) the Federal Rules of Civil Procedure allow for alternative pleading.  (Pl. Opp. at 31-33.)

The Court finds that Plaintiffs have sufficiently pleaded unjust enrichment under Minnesota law.  The extent to which Target retained a benefit of value from the sales of the Gift Cards is a question of fact not properly before the Court at this time.  Moreover, Plaintiffs are permitted to pursue alternative theories that would provide remedies at both law and equity at this stage in the proceedings.  *Marty H. Segelbaum, Inc. v. MW Cap.., LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009).  While Plaintiffs may not ultimately prevail on both breach of contract and unjust enrichment claims, this issue is properly deferred until after discovery.  *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1323 (D. Minn. 2018).  Accordingly, the Court declines to dismiss Count 158 at this time.

### 3.    Negligent Misrepresentation-Count 159

Under Minnesota law, allegations of misrepresentation, whether labeled as fraudulent or negligent, are considered allegations of fraud and are therefore subject to the heightened pleading requirements set forth in Rule 9(b). *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010).  The elements of a fraudulent misrepresentation claim are:  (1) a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; and (4) that the party suffer pecuniary damage as a result of the reliance.  *Angeles v. Medtronic Inc.*, 863 N.W.2d 404, 422 (Minn. Ct. App.2015) (citing *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986)).  Negligent misrepresentation differs only with respect to the required state of mind insofar as a plaintiff must show that the defendant supplied false information for the guidance of others in its business transactions and in doing so failed to exercise reasonable care or competence in obtaining or communicating the information.  *Trooien*, 608 F.3d at 1028 (citing *Florenzano v. Olson*, 387 N.W.2d 168, 174 n. 3 (Minn. 1986)).

Plaintiffs allege that in the course of its business, Target represented to Plaintiffs "that it was selling Gift Cards valued in an amount certain, determined and paid for at the time of sale" (FAC ¶ 1957), that Target "failed to disclose to Plaintiffs that it was aware that it was probable and possible that third parties knew the Activation Code on the Gift Card inventory offered for sale" (*id.* ¶ 1959), that the representations and omissions were made "in connection with Plaintiffs' purchase of Apple iTunes Gift Cards," (*id.* ¶ 1960),

and "material to Plaintiffs' decisions to purchase the Gift Cards" (*id.* ¶ 1961), and that because of Plaintiffs' reliance on the misrepresentations, Plaintiffs "have suffered pecuniary loss" (*id.* ¶ 1965).

While Defendant argues that Plaintiffs' negligent misrepresentation claim fails to meet Rule 9(b)'s heightened pleading standard, Defendant does not appear to argue that the claim otherwise fails under Minnesota law.  (*See* Def. Memo. at 27-28; *see also* Reply at 19-20.)  Plaintiffs argue that just as their UDAP claims satisfy Rule 9(b)'s heightened pleading standard, so too does their negligent misrepresentation claim.  (Pl. Opp. at 42.)

The Court finds that Plaintiffs' allegations satisfy all elements of a negligent misrepresentation claim under Minnesota law.  (*See* FAC ¶¶ 1956-1965.)  The Court also finds that Plaintiffs sufficiently plead with adequate detail the "who, what, where, when, and how" of Defendant's alleged misrepresentation such that Defendant has both notice of and a meaningful opportunity to respond to Plaintiffs' allegations.  *Drobnak*, 561 F.3d at 783; *Commercial Prop.*, 61 F.3d at 644.  Accordingly, the Court finds that Plaintiffs' allegations satisfy Rule 9(b)'s heightened pleading standard and declines to dismiss Count 159 at this time.

### 4.    Fraud by Omission - Count 160

In Count 160, Plaintiffs assert a claim based on a theory of fraud-by-omission. (*See* FAC ¶¶ 1966-1980.)  Under Minnesota law, a party to a transaction generally "has no duty to disclose material facts to the other party."  *Graphic Commc'ns Local 1B Health & Welfare Fund A. v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014) (citation omitted).  Special circumstances may trigger such a duty to disclose material

facts, including (1) a person who has a confidential fiduciary relationship with the other party, (2) a person who has special knowledge of material facts to which the other party does not, and (3) a person who speaks must say enough to prevent the words communicated from misleading the other party.  *See id.* at 695.  "If such a duty is shown, concealment is fraudulent if a party conceals a fact material to the transaction and peculiarly within its knowledge, knowing that the other party acts on the presumption that no such fact exists."  *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 821 (8th Cir. 2006).

Plaintiffs allege that Target failed to disclose "their knowledge of material information germane to the significant security vulnerability with the [Gift Cards]." (FAC ¶ 1967).  They further allege that Target knew about a widespread problem of third parties tampering with the Gift Cards via numerous consumer complaints (*id.* ¶ 1967), and that Target had a "duty to disclose" that the cards were not secure because "(1) Target made representations about the amount-certain value of the cards, and needed to say enough to prevent those words from misleading Plaintiffs, and (2) Target had special knowledge that the cards were susceptible to having their security codes copied by third parties while in Target's custody and control, and that it could determine whether security tape had been tampered with or replaced with imposter tape, to which special knowledge Plaintiffs did not have access" (*id.* ¶ 1969).

The bulk of Defendant's opposition to this claim centers on how it fails under the laws of states other than Minnesota.  (*See* Def. Memo. at 28-31; Reply at 20-21.)  As discussed above, these arguments are properly deferred.  In its Reply, Defendant briefly

restates its argument that Target lacked the requisite "special knowledge" necessary to trigger a duty to disclose under the law of Minnesota. (Reply at 20-21.) The Court reiterates that it finds this argument unavailing. (*See* Section III(1)(C), *supra*.) The Court therefore finds that Plaintiffs' fraud-by-omission claim is properly pleaded under Minnesota law and declines to dismiss Count 160 at this time.

### 5.     Breach of Contract - Counts 161, 162[30]

Under Minnesota law, to plead breach of contract, Plaintiffs must allege: (1) formation of a valid contract; (2) performance of conditions precedent by the plaintiff; and (3) breach of the contract by the defendant. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). A valid contract contains the elements of "offer, acceptance, and bargained for consideration." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014). A contract further requires a "meeting of the minds concerning its essential elements."[31] *Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn. 1980). In Count 161, Plaintiffs allege that "[e]very sale of a Gift Card constitutes a lawful contract between Target and the purchaser." (FAC ¶ 1982.) Plaintiffs further allege that they "bargained for a Gift Card

---

[30] Plaintiffs allege breach of contract in Count 161 and breach of implied contract in Count 162. (*See* FAC ¶¶ 1981-1983.) Because a similar analysis applies, the Court addresses both counts at once.

[31] An implied contract is one inferred from the circumstances and conduct of the parties. *Gryc v. Lewis,* 410 N.W.2d 888, 891 (Minn. Ct. App.1987). "Like other contracts [an implied contract] requires a meeting of the minds." *Cooper v. Lakewood Eng'g & Mfg. Co.*, 45 F.3d 243, 246 (8th Cir. 1995) (quotation marks and citation omitted).

that would securely store their funds until such a time" when they could "use and/or redeem the aforementioned funds to make a purchase" (*id.* ¶ 1983), and that while they "fully complied with their obligations pursuant to the contract[s] with Target" (*id.* ¶ 1984), Target "materially breached these contracts, by among other things, selling to Plaintiffs and other Class members Gift Cards that were compromised . . . ." (*id.* ¶ 1985).[32]

Defendant argues that Plaintiffs' breach of contract claim fails because no contract existed between Target and Plaintiffs. (Def. Memo. at 31 ("There can be no contract between Target and Plaintiffs because when Plaintiffs purchased the [Gift Cards], a contract was created between Plaintiffs *and Apple*.") (emphasis in original)); *see also* Reply at 22.) Defendant further argues that both of Plaintiffs' contract claims fail because Plaintiffs do not allege: (1) an "offer" by Target, either express or implied, that was "accepted" by Plaintiffs; or (2) any facts to suggest that Target indicated an "objective manifestation" to enter into an agreement to protect the Gift Cards from the potential of third-party interception. (Def. Memo. at 31-32; Reply at 22-23.) Plaintiffs contend that whether or not a contract exists between Apple and Plaintiffs does not preclude a contract between Plaintiffs and Target because different parties may enter into

---

[32]    In Count 162, Plaintiffs similarly allege that "[w]hen Plaintiffs and Class members provided funds to the [sic]Target in exchange for a Gift Card, Plaintiffs and members of the Class entered into implied contracts with Target pursuant to which Target agreed to take reasonable measures to safeguard and protect such funds or otherwise prevent improper use and appropriation by a third party." (FAC ¶ 1989.) Plaintiffs further allege that while they performed under those contracts, Target breached them by failing to adequately protect and safeguard their funds. (*Id.* ¶¶ 1991-1992.)

different contracts concerning the same or similar subject matter.[33]   (Pl. Opp. at 39.) Plaintiffs further argue that they explicitly allege both and offer and acceptance.   (*Id.* citing FAC ¶¶ 41, 43, 1982-83, 1989-90).)

The Court finds that Plaintiffs sufficiently allege an "offer" concerning the value of the Gift Cards that was "accepted" by Plaintiffs in both Counts 161 and 162.   Plaintiffs allege that "Target represented to Plaintiffs and all Class members that it was selling Gift Cards valued in an amount certain, determined and paid for at the time."   (FAC ¶ 43). They further allege that "[c]onsumers, when purchasing the Gift Cards, load funds onto the Gift Cards at the point of purchase at a Target retail store for those funds to be used at a later time" and that "Target then activates the Gift Card so that the Activation Code is able to be used."   (FAC ¶ 1982).   Plaintiffs also allege that "Plaintiffs and the other Class members bargained for a Gift Card that would securely store their funds until such a time when Plaintiffs and the other Class members, or their beneficiaries, could use and/or redeem the aforementioned funds to make a purchase."   (FAC ¶ 1983; *see also* ¶¶ 1989-1990.)

---

[33]     Defendant contends that because the Gift Cards cannot be used unless and until they are redeemed by Apple or used in an Apple store, Target was simply a pass-through entity and that no contract between Target and Plaintiffs, implied or otherwise, ever formed.   (*See* Reply at 22-23 ("Target's role in selling the Gift Cards was not an 'objective manifestation' to enter into an agreement to protect Plaintiffs from the potential of third part interception.").   The Court is not persuaded by this argument. Rather, the Court finds that regardless of how the Gift Cards function when purchased does not negate Plaintiffs' properly pleaded allegations that the purchase itself was predicated on an offer and acceptance which led to a contract between Plaintiffs and Target that Target ultimately breached.

The Court finds that these allegations are sufficient to allege that Target offered Plaintiffs Gift Cards whose funds could be used at a later date, and that Plaintiffs accepted that offer. The Court similarly finds that Target has plausibly alleged the existence of an implied contract, as well as its terms. Whether or not there was a "meeting of the minds" is a factual question the jury must determine; however, the Court finds that Plaintiffs' allegations are sufficient to defeat the instant Motion.[34] *In re Target Data Breach*, 66 F. Supp. 3d at 1176-77. Accordingly, the Court declines to dismiss Counts 161 or 162 at this time.

### 6.    Negligence - Count 163

To state a claim for negligence under Minnesota law, Plaintiffs must show the existence of a duty of care owed to them by Target, a breach of that duty, and an injury proximately caused by that breach. *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 869 (D. Minn. 2012) (applying Minnesota law). The existence of a duty is a question of law. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.,* 544 N.W.2d 302, 307 (Minn.1996). In Minnesota, "[g]eneral negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala v. Rolland,* 805 N.W.2d 14, 23 (Minn.2011). A defendant also owes a duty to protect a plaintiff "when action by someone other than the defendant

---

[34]    The Court also notes that Target does not support with any legal authority its contention that a contract between Plaintiffs and Apple necessarily precludes any contract between Plaintiffs and Target.

creates a foreseeable risk of harm to the plaintiff and the defendant and plaintiff stand in a special relationship." *Id.*

Plaintiffs allege that "Target had a duty of care, breached that duty of care, and, as a result, Plaintiffs and Class members were injured due to that breach." (FAC ¶ 1995.) Plaintiffs further allege that "Target's conduct created a foreseeable risk of injury to foreseeable purchasers of the Gift Cards, specifically, Plaintiffs and other Class members," largely by failing to properly safeguard the Gift Card's Activation Codes prior to purchase. (*Id.* ¶¶ 1996-97.)[35]

Defendant argues that Plaintiffs' negligence claim fails because "there is generally no duty in tort to protect an individual from the conduct of third parties." (Def. Memo. at 32; *see also* Reply at 23-24.) Plaintiffs argue that because they have alleged that Target's own conduct created a foreseeable risk to Plaintiffs, a duty exists under general principles of negligence law. (Pl. Opp. at 22 (citing FAC ¶¶ 42-55, 1996-1998).)

Defendant is correct that, absent a special relationship, a defendant typically does not have a duty to warn or protect others from harm caused by a third party's conduct.[36]

---

[35]   Plaintiffs' negligence claims includes multiple allegations detailing: (1) Target's role in allowing harm to Plaintiffs occur; (2) Target's responsibility to safeguard the Activation Codes of the Gift Cards prior to purchase; (3) that Target knew or should have known that the Gift Cards had been compromised by third parties; (4) certain duties owed to Plaintiffs by Target; (5) how Target breached those duties; (6) how Plaintiffs have suffered and continue to suffer injury resulting from those breaches; (7) and why money damages are appropriate. (*See* FAC ¶¶ 1997-2007.)

[36]   The parties appear to agree that no special relationship exists between them.

*Domagala*, 805 N.W.2d 1at 23.  Here, though, the Court finds that Plaintiffs plausibly allege that Target's own conduct, not the conduct of a third party, created a foreseeable risk to Plaintiffs.  (*See, e.g.*, FAC ¶¶ 42-55 (alleging that despite receiving many complaints going back to 2017, Target failed to take adequate and reasonable measures to prevent tampering with Gift Cards, such as training employees to physically check security tape, warning customers, or using security devices); 1996-1998 (further alleging that Target's own conduct created a foreseeable risk of injury to foreseeable purchasers of the Gift Cards).)  The Court therefore finds that a legal duty exists under the general principles of Minnesota's negligence law and declines to dismiss Count 163 at this time.[37]

## IV.    Motion to Strike

Finally, Defendant argues that the Court should strike Plaintiffs' class allegations pursuant to Rule 12(f) and Rule 23(d)(1)(D) because Plaintiffs' nationwide class is: (1) an impermissible fail-safe class; (2) unmanageable due to intensive choice of law analysis; (3) impermissible in states whose UDAP statutes prohibit class actions; and (4) unable to satisfy Rule 23.  (Def. Memo. at 33-39; Reply at 24-28.)

### A.    Fail-Safe Class

A fail-safe class precludes membership unless a member would prevail on the merits.  *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019).  This sort of class is prohibited because "it would allow putative class members to seek a remedy but not be

---

[37]    The Court also finds that Plaintiffs' negligence claim is sufficiently pleaded under Minnesota law.

bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Id.* (internal quotation marks and citation omitted). A "fail-safe" class is also deemed unmanageable under Rule 23(b)(3)(D) "because the court cannot know to whom notice should be sent." *Id.* at 717.

Defendant contends that because Plaintiffs' proposed class includes only individuals whose Gift Card was "subject to unauthorized use" by a third party after purchase "but prior to the first authorized use," its membership is predicated on subjective criteria and merits determinations rather than objective criteria and is therefore an improper fail-safe class.[38] (Def. Memo. at 33 (citing FAC ¶ 66).) Plaintiffs argue that while the proposed class would include those who experienced unauthorized use of their Gift Card by a third party, there is no guarantee that each of the class members would automatically be entitled to relief, and consequently the proposed definition is not fail-safe.[39] (Pl. Opp. at 57.) Plaintiffs further argue that striking allegations at the pleading stage is an extreme measure, and that even during the class certification stage, a problem with the class definition should be resolved by redefinition rather than denying certification. (*Id.* at 58.)

---

[38]    Defendant contends that Plaintiffs' definition improperly incorporates two contested issues of liability including: (1) whether a particular Gift Card was subject to "unauthorized use" by a third party; and (2) whether the "unauthorized use" occurred after the class member purchased the Gift Card at a Target store but "prior to" the class member's purchase. (Def. Memo. at 34.)

[39]    Plaintiffs also contend that whether any Gift Card was subject to unauthorized use by a third party can be ascertained with objective criteria that is likely already in Target's possession. (Pl. Opp. at 57 n.21.)

While Defendant is correct that Plaintiffs' class may ultimately need to be redefined or class certification denied, the Court cannot conclude at this time that the proposed definition is fail-safe. *See Soular N. Tier Energy LP*, Civ. No. 15-556, 2015 WL 5024786, *9 (D. Minn. Aug. 25, 2015). The Court therefore finds it premature to strike Plaintiffs' class allegations. Indeed, the Court finds that discovery is necessary to determine the extent to which each proposed class member is actually entitled to relief and agrees with Plaintiffs that such a determination is likely feasible through the use of objective criteria. The Court invites the parties to revisit this issue, if necessary, at a later stage in litigation. At this time, though, the Court declines to exercise its discretion to take the "extreme and disfavored measure" of striking Plaintiffs' class allegations on their pleadings alone.[40] *BJC Health Sys.*, 478 F.3d at 917.

## B. Manageability

Defendant next argues that the Court should strike Plaintiffs' nationwide class allegations as unmanageable because the Court will be required to engage in a choice of law analysis to determine which law should apply to each plaintiff for each of Plaintiffs' six nationwide common law claims. (Def. Memo. at 34-36; Reply at 25-26.) Defendant asserts that this will be a "herculean task," complicated by the individualized evidence

---

[40] The Court agrees with another Court in this district that a more appropriate remedy to cure a deficient class definition will be to require Plaintiffs to amend the definition at the class certification stage. *Soular*, 2015 WL 5024786, at *9 (citing *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir.2012) ("Defining a class so as to avoid, on the one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.")).

that will be required on every claim for each plaintiff.  (Def. Memo. at 36; *see also* Reply at 26.)

Plaintiffs reiterate that striking allegations at this stage in the proceedings is an extreme and disfavored measure that is rarely granted by courts in the Eighth Circuit. (Pl. Opp. at 59.)  Plaintiffs further assert that it is premature for the Court to analyze and make a final choice of law determination as to any nationwide class claimed by Plaintiffs based just on the First Amended Complaint.  (*Id.*)  Plaintiffs similarly contend that Defendant's assumption that numerous conflicting state laws will apply, or if they do, that they will be unmanageable as a class, "is simply premature and prejudicial to this Court's consideration of a properly developed factual record relevant to choice-of-law questions."  (*Id.*)  Finally, Plaintiffs argue that while the administration of a class action may be a large undertaking, it does not necessarily require a determination that the class action is unmanageable.  (*Id.*)

The Court again notes that striking a party's pleading at the pleading stage is an extreme and disfavored measure.[41]  *BJC Health Sys.*, 478 F.3d at 917.  Despite the number and nature of Plaintiffs' class allegations, the Court cannot conclude from the pleadings that Plaintiffs' class claims are unmanageable or that a class cannot be certified.  Certainly, the Court will be required to engage in a detailed choice of law

---

[41]     Defendant rightly points out that striking class allegations at the pleading stage is appropriate in some situations.  (*See* Reply at 25 (citing *Donelson v. Ameriprise Fin. Servs.*, 999 F.3d 1080 (8th Cir. 2021)).  Nevertheless, the Court finds that doing so here is not appropriate where it is not apparent from the pleadings that the class cannot be certified.

analysis; however, Defendant's argument is based on a number of assumptions which may or may not be correct. The Court finds that a fully developed factual record is necessary to properly engage in a choice of law analysis and declines to preemptively strike any allegation based on unfounded assumptions of unmanageability.

### 3.    Class Action Prohibitions

Defendant also contends that the Court should strike class claims in Kentucky, Mississippi, and Georgia because those states' UDAP statutes prohibit class actions, and in Ohio and Utah because Plaintiffs fail to meet the pleading requirements necessary to trigger class actions there.[42] (Def. Memo. at 37 (citing Ky. Rev. Stat. Ann. § 367.170, Miss. Code Ann. § 75-24-15(4)) and Ga. Code § 10-1-399(a)); Reply at 26-27.) Plaintiffs argue that because each prohibition is a state procedural rather than substantive requirement, the prohibitions do not apply in this case which may proceed as a federal class action. (Pl. Opp. at 61.) Defendant disagrees that the prohibitions are procedural. (Reply at 26-27.)

The Court finds that the issue of whether the laws in the contested states are procedural or substantive is insufficiently briefed. The Court therefore directs the parties to meet and confer as to whether the issue can be resolved; and if not, to propose a supplemental briefing schedule.

---

[42]    Ohio and Utah authorize a class action only for acts previously found deceptive judicially or by the state attorney general or enforcing authority. *See Miller v. Basic Rsch., LLC*, 285 F.R.D. 647, 654-55 (D. Utah 2010); *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006).

### D.     Fed. R. Civ. P. 23

Federal Rule of Civil Procedure 23(a) governs class certification.  A party seeking

class certification must meet the requirements of Rule 23(a) by establishing that:  (1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties

are typical of the claims of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, plaintiffs

must satisfy one of the three subsections of Rule 23(b).  *See Stuart v. State Farm Fire &*

*Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018).  Here, Plaintiffs seek certification under

Rule 23(b)(3), which requires a showing that "questions of law or fact common to class

members predominate" and "that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Defendant argues that the Court should strike Plaintiffs' class allegations because

Plaintiffs will be unable able to satisfy the requirements of Federal Rule of Civil

Procedure 23(a).  (Def. Memo. at 37-39.)  Defendant further argues that Plaintiffs' claims

fail under Rule 23(b)(3) because individualized issues, including determinations as to

actual damages, causation, and reliance predominate over all of their claims.  (*Id.* at 39.)

Plaintiffs contend that Defendant's argument is an untimely and unsupported opposition

to a motion for class certification that is inappropriate at the pleading stage.[43]  (Pl. Opp. at 61-64.)

While the Court has the authority to dismiss Plaintiffs' class claims at the pleading stage, *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059, (8th Cir. 2012), it declines to do so here.  The Court once again notes that striking a party's pleading at the pleading stage is an extreme and disfavored measure.  *BJC Health Sys.*, 478 F.3d at 917. While Plaintiffs may ultimately be correct that Plaintiffs are unable to satisfy Rule 23's requirements, particularly the predominance requirement, the Court finds that an appropriate decision can be made only after allowing Plaintiffs to conduct discovery.[44] Accordingly, the Court declines to strike Plaintiffs' class allegations at this time.

## CONCLUSION

For the reasons  set forth above, the Court grants in part and denies in part Defendant's Motion to Strike and Dismiss Plaintiffs' First Amended Class Action Complaint.

---

[43]     Plaintiffs further argue that even if the Court considers the issue, Defendant's argument fails because their First Amended Complaint clearly sets forth how class certification can be reached.  (Pl. Opp. at 62-64.)

[44]     During oral argument, Plaintiffs made an oral motion for time to conduct limited discovery if the Court found that their petition did not satisfy every Rule 23 requirement. (*See* Doc. No. 82.)  Defendant objected.  (*Id.*)  The Court denies the oral motion as moot; Defendants may conduct all inquires related to Rule 23 during the normal course of discovery.

# ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Strike and Dismiss Plaintiffs' First Amended Class Action Complaint. (Doc. No. [56]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      Defendant's Motion is **GRANTED** insofar as any potential relief available under Count 33 is limited to attorneys' fees and costs as set forth in the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §10-1-370.

2.      With respect to certain statutory prohibitions related to class action lawsuits in Kentucky, Mississippi, Georgia, Ohio, and Utah, the Court requires additional briefing on whether the contested laws in those states are procedural or substantive.  Therefore, within 30 days of the date of this Order, the Court directs the parties to meet and confer as to whether the issue can be resolved; and if not, to propose a supplemental briefing schedule.

3.      Defendant's Motion is **DENIED** in all other respects.

4.      Plaintiffs' oral motion for time to conduct limited discovery with respect to their satisfaction of Fed. R. Civ. P. 23 is **DENIED AS MOOT**.  All discovery shall be conducted at the same time.

Dated:  May 19, 2022                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge