UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Shukai Chen, et al.,<br><br>                        Plaintiffs,<br><br>v.<br><br>Target Corporation,<br><br>                        Defendant. | Case No. 21-cv-1247 (DWF/DJF)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TARGET CORPORATION'S MOTION TO COMPEL** |

## INTRODUCTION

Target moves to compel interrogatory responses that are fundamental to Plaintiffs' claims. Plaintiffs allege that they purchased iTunes gift cards at Target retail stores, and that unidentified criminals accessed Plaintiffs' cards and drained the associated funds before Plaintiffs could spend them. Plaintiffs do not allege that Target had any role in designing the cards or their security measures, and contrary to Plaintiffs' allegations, Target does not have any access to data about the cards' redemptions or use. Yet from these loosely sketched allegations, Plaintiffs draw the conclusion that Target is responsible for the thefts at issue, and even that Target committed fraud.

Plaintiffs' personal knowledge and experiences are necessary to fill in the many gaps in their allegations. Plaintiffs *assert* that Target made material misrepresentations and *theorize* as to how the tampering occurred, but their pleading does not actually set out these and other core components of Plaintiffs' case. So, Target served discovery aimed at these basic facts. Plaintiffs refuses to answer Interrogatory No. 18, which asks about the alleged statements underlying Plaintiffs' misrepresentation claims, by saying that the question

requires expert opinion and cannot be answered now. But no expert opinion, or other discovery, should be necessary for Plaintiffs to tell Target what statements they believe were misleading. Similarly, Plaintiffs refuse to answer Interrogatory No. 24, which asks for basic information about Plaintiffs' credibility and adequacy as class representatives. But Plaintiffs cannot hold themselves out as class representatives while also refusing to answer straightforward questions about themselves.

Target has endeavored to be reasonable and it brings this motion only because it has to. Plaintiffs previously refused to answer two additional interrogatories, as discussed in the informal conference with the Court on June 21, 2023. (Doc. No. 137.) Following the Court's guidance, Target withdrew its disputes about those two interrogatories. Because the remaining requested information is plainly relevant and proportional to this dispute, Target respectfully moves the Court for an order compelling discovery.

## FACTUAL BACKGROUND

In the Amended Complaint, Plaintiffs allege that they purchased "Apple iTunes gift cards" only to later discover that, after activation, the funds had been drained without their knowledge or authorization.[1] *See, e.g.*, Am. Compl. ¶ 8 (Doc. No. 47). But their Complaint offers little insight into what Plaintiffs allege was *Target's* role in that issue.

---

[1] The correct name for the cards in question is the App Store and iTunes gift cards, which Target refers to here as the "iTunes gift cards." *See* Dixon Decl. ¶ 2. Apple replaced the iTunes gift card with the Apple gift card in 2020. *Id.* ¶ 7.

2

## I. Apple designed, manufactured, and activated the iTunes gift cards.

Apple, not Target, was responsible for the iTunes gift cards. Every iTunes gift card had a unique barcode number, visible on the back, and a unique redemption code, which was concealed under a strip of tape. *Cf. id.* ¶ 46. Once a Target customer purchased a gift card, it was activated by Apple. The customer could then unseal the redemption code on the card and use that code to make certain purchases from Apple. *See How to redeem your Apple Gift Card or App Store & iTunes gift card*, Official Apple Support, https://support.apple.com/en-gb/HT201209 (last visited May 12, 2023).

Plaintiffs allege that criminals intervened by copying the sealed redemption code before the gift card was purchased by each Plaintiff. Am. Compl. ¶¶ 42, 46. Then, the criminals used the redemption code to spend or withdraw the associated value *after* the Plaintiff had purchased the card and Apple had activated it, but *before* the Plaintiff (or other gift card recipient) had a chance to use the redemption code themselves. *See id.* ¶ 44.

Plaintiffs do not allege that Target had any role in designing or manufacturing the iTunes gift cards and their security features, including the tape protection for the redemption code. That's because Target had no role. Dixon Decl. ¶ 3. Target only received the gift cards, manufactured by or at Apple's direction, through a third-party distributor. *Id.* ¶ 4. Target did not design the cards or their security features. And any statements or representations on the cards or their packaging did not come from Target. *Id.* ¶ 3. When a guest purchased a gift card, Target did not, and could not, add monetary value to the card— Apple did. *Id.* ¶ 5. As stated on the card itself, Apple controlled the terms and conditions of use. *Id.* ¶ 6. Likewise, Target had no role in the alleged theft of Plaintiffs' gift card funds.

3

Instead, as Plaintiffs allege, unidentified third parties stole the redemption codes. *See* Am. Compl. ¶ 46.

## II. Despite Target having no role in their claims, Plaintiffs still filed this putative class action against Target.

Plaintiffs assert dozens of claims, many of which accuse Target of committing fraud. Plaintiffs seek to certify a "Nationwide Class" of "All purchasers of an Apple iTunes Gift Card, acquired from Target retail stores, which was subject to unauthorized use by a third party after purchase of the Gift Card but prior to the first authorized use." *Id.* ¶ 65. The Amended Complaint also seeks to certify state subclasses for each of the 50 states and the District of Columbia. For each of the 51 subclasses, the Amended Complaint alleges statute-based consumer fraud violations and breaches of warranty. *Id.* ¶¶ 82–1945 (listing Counts 1–157). Plaintiffs also allege common law claims for unjust enrichment (Count 158), negligent misrepresentation (Count 159), fraud by omission (Count 160), breach of contract (Count 161), breach of implied contract (Count 162), and negligence (Count 163) for the nationwide class under Minnesota law, or alternatively, for state subclasses. *See id.* ¶¶ 1946–2007.

Plaintiffs attempt to connect the specific crimes that they experienced to a larger, supposed fraud using a series of assumptions. For example, Plaintiffs assert that Target knew that the cards were "unsecure and susceptible to tampering by third parties" based on their assumption that Target received "hundreds, if not thousands" of complaints related to this theft. *Id.* ¶¶ 42, 47. Plaintiffs reach this conclusion by observing that Target is the United States' "eighth-largest retailer" and thus, apparently simply by virtue of Target's

size, "it is likely that tens of thousands of customers, if not more," were affected by iTunes card-related theft. *Id.* ¶ 3. Plaintiffs further assume that Target "has access to records indicating when the Gift Cards are loaded, when they are redeemed, and how they are redeemed." *Id.* ¶¶ 47–48.

Target can disprove many of Plaintiffs' allegations through its own evidence. Target can show, for example, that the volume of complaints and scale of any tampering is nowhere close to the scope that Plaintiffs allege. Only a *very* small fraction of Target customers have reported the issue.[2]

Other information is solely within Plaintiffs' control—but omitted from the Amended Complaint. For example, Plaintiffs allege in the abstract that Target made misrepresentations about the iTunes gift cards. Yet despite Rule 9(b)'s particularity requirements, not one Plaintiff specifically alleges a misrepresentation made by Target to them about the iTunes cards—let alone their *reliance* on that alleged misrepresentation to their detriment. Instead, Plaintiffs make vague references to supposed representations that the iTunes cards "have characteristics, uses, benefits, and qualities which they do not have" and that Target represented that the cards "are of a particular standard and quality when they are not." Am. Compl. ¶ 347; *see also id.* ¶¶ 200, 204. Similarly, Plaintiffs theorize that

---

[2] Indeed, Plaintiffs attached a spreadsheet to the Amended Complaint to support their claim that "hundreds, if not thousands" of customer complaints have been made. *See* Am. Compl. ¶ 47; Am. Compl. Ex. 1 (listing complaints related to gift cards). It is telling that even this spreadsheet shows that the majority of complaints are *not* about customers "who experienced the depletion of their Gift Card funds." *See* Am. Compl. Ex. 1 (including complaints about issues with online orders, promotional deals, and shipment delays).

5

"one potential method" of gift-card tampering involved counterfeit tape, *id.* ¶ 46, but no single Plaintiff actually alleges that this, or any other method, was used on the gift cards that they purchased.

### III.   Plaintiffs have not meaningfully answered key interrogatories.

Target served its first interrogatories on August 15, 2022, in part to gain clarity on these key factual allegations. Although the responses to some interrogatories varied by Plaintiff, the responses relevant to this motion were all virtually identical, and all were non-responsive. The parties met and conferred several times about these and other disputes, with little progress. Following the Court's guidance, Target withdrew its disputes as to two requests, but Plaintiffs continue to stonewall on Interrogatories Nos. 18 and 24. In the parties' last communication on the subject on June 27, Target asked Plaintiffs to confirm whether the parties were still at an impasse as to those requests, and Plaintiffs never responded.

### A.   Plaintiffs refuse to identify the misrepresentations on which their claims are based.

Interrogatory No. 18 asks Plaintiffs about the misrepresentations that are at the core of their allegations.

> **INTERROGATORY NO. 18:** Describe with particularity each misrepresentation or omission you contend that Target made with respect to each of the Apple iTunes gift cards you identified in response to Interrogatory No. 5 and which form the basis of your claims of fraud and negligent misrepresentation.
>
> **ANSWER TO INTERROGATORY NO. 18:** Plaintiff objects to this Interrogatory to the extent it requests disclosure of expert testimony that is premature or beyond the scope of Federal Rule of Civil Procedure 26(a)(2). Plaintiff further objects to this Interrogatory on the grounds that it is

6

> premature insofar as it seeks "contention" discovery to which Defendant is not entitled at this time: the interests of judicial economy and efficiency dictate that contention discovery is more appropriate after a substantial amount of discovery has been conducted. Plaintiff also objects to this Interrogatory to the extent that the Interrogatory calls for information within Defendant's own possession, custody, or control, or that are of public record, well-known to, or readily obtainable by Defendant.
>
> Subject to and without waiving Plaintiff's General and Specific Objections, Plaintiff refers Defendant to the Complaint. Plaintiffs' experts will provide opinions responsive to this Interrogatory pursuant to the Court's schedule for expert disclosures.

Emory Decl. Ex. 1 at 17–18 (exemplar requests and responses). During the meet and confers, Target explained that Plaintiffs' allegations about misrepresentations and omissions by Target were critical to Plaintiffs' fraud claims, and that Target was entitled to know the specific representations or omissions that each Plaintiff received. In response, Plaintiffs stated that they believed Interrogatory No. 18 was a "premature contention Interrogatory that is not proper at this time." Emory Decl. Ex. 2 at 6. Whether or when Plaintiffs might answer this interrogatory went unaddressed.

### B. Plaintiffs refuse to say whether they have been plaintiffs in a prior class action.

Interrogatory No. 24 asks Plaintiffs about their prior litigation experience:

> **INTERROGATORY NO. 24:** Identify any and all lawsuits, litigation and/or civil, criminal and/or administrative proceedings that you are currently, or ever were, a party to including, but not limited to, proceedings in which you were/are a class representative and/or a class member, and for each lawsuit or litigation identified provide the case caption, court number, jurisdiction, and outcome for all such lawsuits.
>
> **ANSWER TO INTERROGATORY NO. 24:** Plaintiff objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome. Plaintiff further objects to this Interrogatory to the extent it seeks information

7

> that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case with respect to such claims or defenses.
>
> Subject to and without waiving Plaintiff's General and Specific Objections, Plaintiff states: Plaintiff stands on the objection.

Emory Decl. Ex. 1 at 21–22. During the meet and confer process, Target explained that it was particularly interested to know whether any Plaintiff had previously served as a class member or class representative. Plaintiffs' counsel initially seemed open to supplementing their responses to this request—and, indeed, some Plaintiffs already *have* supplemented their responses to answer this Interrogatory—but to date, many Plaintiffs have not done so.[3] During the parties' informal pre-motion call with the Court, Plaintiffs' counsel represented that he believed *all* responsive Plaintiffs had supplemented their answers to this request—or, if not, they would be willing to do so. Following that call, Target informed counsel that it has not received supplemental responses from Plaintiffs Arotin, D'Annolfo, Gouge, Jackson, Kim, Lewis, Manning, McCullough, McMaster, Rogers, Sikora, and Turek. Ex. 3 at 1. Target's current understanding is that Plaintiffs Jackson, Lewis, and Sikora have stopped responding to their attorneys, but that counsel is in touch with the other named Plaintiffs. Yet Plaintiffs have continued to ignore Target's requests and refused to supplement the responses of the missing Plaintiffs. *See id.* Instead, Plaintiffs seem to have elected to delay and draw out discovery as much as possible.

---

[3] Plaintiffs Bailey, Baker, Brown, Chen, Moore, Morris, Sandifer, Wilczynski, Lira-Porcho, Logsdon, Mitchell, Diehl, Dunham, Williams, and Wiley submitted a supplemental response that answered Interrogatory No. 24. Accordingly, as to those Plaintiffs, Target moves to compel responses to Interrogatory No. 18 only. To the extent that the remaining Plaintiffs supplement their responses to this interrogatory, Target will withdraw this portion of the motion.

# ARGUMENT

Rule 37 of the Federal Rules of Civil Procedure allows a party seeking discovery to move to compel disclosures from a party who refuses to answer its interrogatories. Fed. R. Civ. P. 37(a)(3)(B)(iii). If the motion is granted or "if the disclosure or requested discovery is provided after the motion is filed," the Court must "require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

**I.      The Court should compel Plaintiffs to answer Interrogatory No. 18 and explain the basic facts underlying their claims.**

It almost goes without saying, but Rule 26 of the Federal Rules of Civil Procedure permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A party opposing a discovery request "shoulders the burden of showing that [the] discovery request is overly broad and burdensome . . . and the written objection must allege facts which demonstrate the extent and nature of the burden imposed by preparation of a proper response." *Mead Corp. v. Riverwood Nat. Res. Corp.*, 145 F.R.D. 512, 516 (D. Minn. 1992). In particular, interrogatories must, to the extent they are not objected to, be answered separately and fully in writing under oath. Fed. R. Civ. P. 33(b)(3). Plaintiffs must answer Target's fairly stated interrogatories; they cannot avoid answering by making unsupported objections. *See Brown v. Express Scripts*, No. 4:17CV866 HEA, 2019 WL 1876970, at *3 (E.D. Mo. Apr. 25, 2019).

9

Interrogatory No. 18 seeks essential facts underlying Plaintiffs' claims, drawn from Plaintiffs' own personal knowledge, and do not depend on their experts' opinions or Target's discovery responses. *See Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*, No. CV 10-4362 (JNE/JJG), 2012 WL 13028232, at *8 (D. Minn. Jan. 12, 2012) (if a plaintiff knows or can reasonably discover the information requested in an interrogatory, it is required to disclose that information).

Plaintiffs' allegations against Target are almost entirely based on what Target did or did not represent to them as part of their iTunes gift card purchases. Plaintiffs allege multiple counts of fraud, including under the Minnesota Consumer Act and Minnesota Deceptive Trade Practices Act, Am. Compl. ¶¶ 976–1000, and common law fraud by omission, *id.* ¶ 160. Plaintiffs also generally allege that Target made fraudulent representations. *See, e.g.*, *id.* ¶¶ 66, 78(f) & (k), 87. These fraud allegations all require Plaintiffs to prove that Target knowingly made a false representation of material fact, that Target intended to induce reliance on the representation, and that Plaintiffs did rely on those representations to their detriment. *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1324 (D. Minn. 2018) (citing *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009)). For fraud by omission, Plaintiffs must similarly prove that Target omitted a material fact that Target had a duty to disclose, that Target intended Plaintiffs to rely on that omission, and that Plaintiffs did rely on the omission to their detriment. *Selective Ins. Co. of Am. v. Heritage Constr. Companies, LLC*, No. CV 19-3174 (JRT/JFD), 2022 WL 4096084, at *6 (D. Minn. Sept. 7, 2022) (citing *Specialized Tours, Inc. v. Hagen*,

10

392 N.W.2d 520, 532 (Minn. 1986)).[4] Evidence of what Target did or did not say—and Plaintiffs' reliance on those statements or omissions—are the heart of Plaintiffs' case.

To that end, Target served Interrogatory No. 18 to better understand what misrepresentations or material omissions Plaintiffs contend that Target made and that they relied on. Plaintiffs objected to the Interrogatory and referred Target generally to their Complaint. *See* Emory Decl. Ex. 1 at 18. They also responded that the issue was the subject of expert opinion and would be addressed as part of their expert disclosures. *Id.* When the parties met and conferred about this inadequate response, Plaintiffs' counsel again said that Plaintiffs' answers were "thoroughly detailed in the Complaint" and characterized Interrogatory No. 18 as a "premature contention Interrogatory that is not proper at this time." Emory Decl. Ex. 2 at 6.

Plaintiffs are wrong on both counts. The Amended Complaint does not allege a single specific misrepresentation or omission, let alone "thoroughly detail" them. As discussed above, Plaintiffs' allegations are so vague about the supposed misrepresentations and omissions at issue that it is impossible to determine what they were, let alone when or how they were made, or how Plaintiffs learned of them and relied on them. *See, e.g.*, Am. Compl. ¶ 347; *see also id.* ¶¶ 200, 204. This deficiency is especially problematic because to the extent Plaintiffs rely on statements on the iTunes gift cards and packaging, those are *Apple's* statements, not Target's. And even if the Amended Complaint identified specific

---

[4] As Target made clear in its Motion to Dismiss, Plaintiffs' nationwide class is unmanageable because it requires an individual choice of law analyses as to each claim. Target looks to Minnesota substantive law as illustrative of the elements of these claims.

11

representations or omissions, answering an interrogatory with reference to the pleadings is inappropriate. *Peterson-Rojas v. Dakota Cnty.*, No. 21-CV-738 (DSD/TNL), 2022 WL 336829, at *5 (D. Minn. Feb. 4, 2022) ("Listing out various facts in the Complaint does not answer the questions posed by the interrogatories."). Plaintiffs should not be allowed to sneak through a putative class-action lawsuit by hiding behind generic class allegations.

Likewise, Interrogatory No. 18 is neither a premature nor improper contention interrogatory. Although Interrogatory No. 18 uses the word "contend," it asks only for basic facts—specific statements or omissions that only each Plaintiff can identify for themselves. *Cf. In re Grand Casinos, Inc.*, 181 F.R.D. 615, 618 (D. Minn. 1998) (holding that despite the plaintiff's argument, an interrogatory seeking "plainly discoverable" facts was "non-contentious"). Interrogatories requesting relevant statements or omissions "are exactly the type of interrogatories which are designed to narrow the factual issues for deposition and trial and ensure all parties possess the relevant facts." *The Mitchell Co. v. Campus*, No. CA 07-0177-KD-C, 2008 WL 2468564, at *8 (S.D. Ala. June 16, 2008); *see also Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1063 (D. Minn. 2001) (relying on plaintiff's interrogatory responses to describe the communications underlying plaintiff's fraud claims); *Agristor v. Hansen*, No. CIV. 4-84-632, 1985 WL 6073, at *7 (D. Minn. Feb. 13, 1985) (relying on defendant's interrogatory responses to describe the communications underlying defendant's counterclaim for fraud).

Discovery about alleged misrepresentations is so essential to litigation that courts require not only timely, but fulsome, answers. *See McGhee v. N. Am. Bancard, LLC*, No. 317CV00586AJBKSC, 2020 WL 12739807, at *1 (S.D. Cal. July 15, 2020) (plaintiff must

amend his interrogatory response to identify each alleged misrepresentation or omission by defendant, and to the extent plaintiff cannot recall any specific misrepresentations or omissions by defendant, he is to respond accordingly); *Radian Asset Assur., Inc. v. Coll. of Christian Bros. of New Mexico*, No. CIV 09-0885 JB/DJS, 2010 WL 5173571, at *12 (D.N.M. Nov. 11, 2010) (compelling plaintiff to fully answer interrogatory addressing the omissions that plaintiff asserted as part of its claim for negligent misrepresentation). This case is no different.

Even if Interrogatory No. 18 could be deemed a contention interrogatory, that would not give Plaintiffs a free pass from having to answer it until some undetermined future date. This Court has held that contention interrogatories are no different from other interrogatories. *See, e.g.*, *Kinetic Co. v. Medtronic, Inc.*, No. CV 08-6062 (JMR/AJB), 2010 WL 11561275, at *3 (D. Minn. Nov. 23, 2010). That is particularly true in a case like this, where Plaintiffs can answer the interrogatory without the need for legal or expert analysis—and can supplement later if necessary. *See In re: EpiPen Direct Purchaser Litig.*, No. 20-CV-827 (ECT/JFD), 2023 WL 2675134, at *4 (D. Minn. Mar. 29, 2023) (ordering the plaintiffs to "answer the interrogatories now and supplement them later with responsive information from expert discovery" so that the lack of basic facts does not become a roadblock in discovery). The answers to Interrogatory No. 18 are necessarily based on Plaintiffs' recollections and reliance, and these answers will help Target "understand the basis for the claims levied against [it] and prepare a defense" and will help narrow the issues for trial. *Id.* No matter how this interrogatory is characterized, it must be answered.

**II.     The Court should compel Plaintiffs to answer Interrogatory No. 24, which gets at their credibility and adequacy as class representatives.**

Interrogatory No. 24 asks Plaintiffs to identify prior legal proceedings in which they were a party. During the parties' meet and confers, Target narrowed this request to inquire into only those instances in which Plaintiffs acted as a class member or representative in a class action. Some of the Plaintiffs have responded adequately to this interrogatory, but Plaintiffs Arotin, D'Annolfo, Gouge, Jackson, Kim, Lewis, Manning, McCollough, McMaster, Rogers, Sikora, Turek, Wiley, and Xue have not supplemented their responses.[5]

During the parties' informal motion conference, Plaintiffs' counsel represented to the Court that they had supplemented the responses for all Plaintiffs with whom counsel is in touch. But that's not true. For example, Plaintiff Turek has not supplemented his interrogatory responses, but he appeared, *represented by counsel*, at his deposition on June 26. Likewise, many of the other Plaintiffs who have not responded to Interrogatory No. 24 have provided their updated availability to sit for their own depositions. Clearly, Plaintiffs' counsel is in touch with many, if not all, of the named Plaintiffs. Because counsel has refused to take clear positions, Target is in the dark about whether certain Plaintiffs are and are not responsive to their counsel's requests. Plaintiffs' counsel previously indicated that Plaintiffs Sikora, Jackson, and Lewis were not responsive, but that information is several months old. Target has also not received any discovery responses from Plaintiffs McMaster

---

[5] Target has not received *any* discovery responses from McMaster, Lewis, Jackson, Manning, or Sikora. Plaintiffs' counsel has indicated that certain named Plaintiffs are not responding to their requests and Plaintiffs' counsel are amenable to dismissal of those individuals.

14

and Manning, and it is unclear why. Counsel should state on the record which Plaintiffs are still active and they could do so by properly answering this interrogatory. But Plaintiffs continue to refuse to respond to this request.

Plaintiffs' prior litigation experience is relevant to Plaintiffs' suitability as class representatives, and it may yield information that can be used for cross-examination. *See In re SciMed Life Sec. Litig.*, No. CIV. 3-91-575, 1992 WL 413867, at *4 (D. Minn. Nov. 20, 1992) (compelling plaintiffs to respond to discovery requests regarding their prior litigation experience); *Tax Ease Lien Servicing, LLC*, 2017 WL 6939338, at *20 (permitting discovery into prior legal proceedings related in some way to the subject of the present dispute). That some of the named Plaintiffs *have already* responded to Interrogatory No. 24 further confirms the relevance and proportionality of the request. The Court should compel Plaintiffs Arotin, D'Annolfo, Gouge, Jackson, Kim, Lewis, Manning, McCollough, McMaster, Rogers, Sikora, Turek, Wiley, and Xue to supplement Interrogatory No. 24. If Plaintiffs supplement these responses before the Court rules on this motion, Target will withdraw this part of the motion.

## CONCLUSION

For these reasons, Target respectfully requests the Court grant its motion to compel and award Target its reasonable expenses, including attorney's fees and costs, in bringing this motion.

Dated: July 13, 2023  **GREENE ESPEL PLLP**

 *s/Erin R. Emory*
Sybil L. Dunlop, Reg. No. 0390186
Erin R. Emory, Reg. No. 0401215
Aaron P. Knoll, Reg. No. 0393066
Jeya Paul, Reg. No. 0386950
Faris A. Rashid, Reg. No. 0391508
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
sdunlop@greeneespel.com
eemory@greeneespel.com
aknoll@greeneespel.com
jpaul@greeneespel.com
frashid@greeneespel.com
(612) 373-0830

Attorneys for Target Corporation